IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Georgia-Pacific Consumer Products LP, et al.,     Case No. 3:09CV1071

        Plaintiffs

   v.                                          ORDER

Four-U-Packaging, Inc.,

        Defendant

This is a suit by a trademark owner of branded paper towel dispensers and toweling against a distributer of a different brand of paper towels. Georgia-Pacific Consumer Products LP and Georgia-Pacific LLC [together, Georgia-Pacific] assert six causes of action against Four-U-Packaging, Inc. [Four-U]: 1) false representation and false designation of origin and dilution under the Lanham Act, 15 U.S.C. § 1125; 2) contributory trademark infringement under the Lanham Act, 15 U.S.C. § 1114; 3) counterfeiting under the Lanham Act, 15 U.S.C. § 1114(1)(a); 4) common law unfair competition; 5) tortious interference with contractual relationships; 5) tortious interference with business relationships; and 6) violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq.*

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is Four-U's motion to stay proceedings. [Doc. 15]. For the reasons discussed below, the motion is granted.

**Background**

Georgia-Pacific is organized under Delaware law and has its principal place of business in Atlanta, Georgia. Georgia-Pacific leases paper towel dispensers to distributors who, in turn, sublease the dispensers to end users such as restaurants and office buildings. The dispenser and towels are trademarked. The lease and sublease agreements require the end users to stock the dispensers with only Georgia-Pacific brand paper towels.

Four-U is an Ohio seller and distributor of janitorial supplies. Four-U is a distributor for the von Drehle Corporation [von Drehle], which makes paper towels that fit in Georgia-Pacific dispensers. Georgia-Pacific alleges that operators of locations with its dispensers have bought von Drehle towels from Four-U and placed those towel in the Georgia-Pacific dispensers.

Georgia-Pacific brought cases similar to the instant one in two other district courts. Following dismissal of those cases, Georgia-Pacific has appealed the dismissal orders.

In the first case, Georgia-Pacific sued von Drehle and a distributor alleging trademark infringement, unfair competition, tortious interference with current and prospective business relationships, unfair and deceptive trade practices, conversion and concerted action. *Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.*, 645 F. Supp. 2d 532, 536-39 (E.D.N.C. 2009). Granting summary judgment in defendants' favor, the district court held that Georgia-Pacific failed to show that von Drehle's paper towels caused customer confusion because the relevant end users were the businesses purchasing paper towels from distributors, not the customers using paper towels in restrooms. *Id.* at 536-37. The court also rejected Georgia-Pacific's contract-based claims, holding that even if: 1) Georgia-Pacific entered into valid contracts with distributors and business owners requiring the latter to use only Georgia-Pacific paper towels; and 2) von Drehle marketed its paper towels for use in Georgia-Pacific dispensers, this action would be justified as legitimate competition.

*Id.* at 537-38. This case is now pending before the Fourth Circuit. *Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.*, *appeal docketed,* No. 09-1942 (4th Cir. August 21, 2009).

In the second case, Georgia-Pacific sued a distributor of von Drehle paper towels alleging almost identical causes of action. The district court granted summary judgment to the defendant distributor on all claims except a contributory trademark infringement claim. *Georgia-Pacific Consumer Prods., LP v. Myers Supply, Inc.*, 2009 WL 1850324, *3-7 (W.D. Ark.).

After a bench trial, the district court dismissed that claim also, holding that there was no likelihood of confusion. *Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 2009 WL 2192721, *8 (W.D. Ark.). The court held that the purchasers of the paper towels were the end users, not the customers using the towels. *Id.*, *6. The court also noted that "Georgia-Pacific has produced no evidence that an actual consumer or purchaser of paper towels has ever been confused by the presence of Von Drehle paper in a[] [Georgia-Pacific] dispenser." *Id.* That case is now pending before the Eighth Circuit. *Georgia-Pacific Consumer Prods. LP v. Myers Supply*, *appeal docketed*, No. 09-2980 (8th Cir. August 21, 2009).

Four-U seeks a stay pending the outcome of the appeals in those two cases. Though Four-U contends that the decisions in those cases bar this case due to issue preclusion, rather than seeking a ruling on that contention, Four-U argues that a stay is a "more economical and potentially less disruptive solution" than dismissal. [Doc. 15, at 2].

Georgia-Pacific argues that a stay is inappropriate because: 1) Four-U cannot meet the high standard for obtaining a stay; and 2) issue preclusion is inapplicable because the factors for determining whether there is trademark infringement—including Four-U's knowledge, motives and actions—were not at issue in the previous cases.

3

**Discussion**

**A. Standard for Issuance of a Stay**

The Supreme Court has held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.*

The decision to enter a stay "ordinarily rests within the sound discretion of the District Court." *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). A court must, however, "tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Id.*

"If there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, *supra*, 299 U.S. at 255. The burden is therefore on the party seeking the stay to show "pressing need for delay" and "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, *supra*, 565 F.2d at 396. The stay must only be entered for a certain period of time and must not "place [the] case in limbo for years." *Id.*

As one court explained the requirements for issuing a stay:

> While no precise test has developed to guide district courts in deciding whether to grant requested stays, courts have noted a number of relevant considerations. The most important consideration is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay. The district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources. Relevant to this consideration is the question of whether

> a separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay.

*IBEW, Local 2020 v. AT&T Network Sys.*, 1989 WL 78212, *8 (6th Cir. 1989) (unpublished disposition) (internal citations omitted).

Thus, the factors I consider in whether to grant a stay in this case include: 1) the balance of hardships [the hardship to Four-U in going forward and the potential harm to Georgia-Pacific in staying the action]; 2) the potential harm to the public; and 3) judicial economy and efficiency.

### B. Issue Preclusion

Issue preclusion "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009) (citing Restatement (Second) of Judgments §§ 13, 27 (1982)).

There are four requirements that must be met before issue preclusion bars litigation of an issue:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 589-90.

### C. Application

#### 1. Balance of Hardships

Georgia-Pacific is a large supplier of commercial paper towels and paper towel dispensers. Four-U is an Ohio company which sells and distributes janitorial and sanitation supplies, including paper towels. I draw an inference, based on the information provided in this case, that Georgia-

5

Pacific is a much larger corporation than Four-U. In "weigh[ing] competing interests and maintain[ing] an even balance", and for the reasons discussed below, I find that the balance of hardships weighs in Four-U's favor.

Notably, Georgia-Pacific has not sued the manufacturer of the competitor paper towel, von Drehle, in this suit, nor has it sued the end users of the paper towel dispensers who, assuming *arguendo* the validity of the lease agreements, are seemingly in breach of contract for placing von Drehle paper towels in Georgia-Pacific's dispensers.

Rather, a letter sent by Georgia-Pacific to its distributors—attached to Four-U's motion—states that Georgia-Pacific "will continue to sue distributors that stuff [Georgia-Pacific] dispensers . . . in violation of our trademark and contractual rights." [Doc. 15-1].[1]

The harm if I do not grant the stay is that Four-U will have to endure the expense, delay and uncertainty of litigation similar to that already found meritless in two other jurisdictions. While, as Georgia-Pacific argues, the elements of the Ohio state law claims may vary—somewhat—from the

---

[1]The letter also states that Georgia-Pacific has: 1) "[d]emanded that over 200 stuffing distributors, towel manufacturers, and end users cease & desist their activities of stuffing GP Professional's equity leased dispensers"; 2) "[f]iled 10 lawsuits (several of which are ongoing)"; and 3) "resolved hundreds of stuffing matters successfully so far, though we are preparing to file additional lawsuits against distributors and manufacturers that have not discontinued stuffing activities." [Doc. 15-1].

My ruling here hits the pause button as to but one case against one among the many distributors Georgia-Pacific is targeting. Georgia-Pacific, moreover, appears embarked on a widespread campaign against middlemen, rather than the company—von Drehle—that originally creates the product and problem at one end and the business proprietors at the other end who install the product and amplify the problems confronting Georgia-Pacific. Given the likely imbalance in resources between the plaintiff and defendant in this case, simple equity favors granting the defendant's request for a stay. *Cf. White Mtn. Apache Tribe v. Arizona*, 649 F.2d 1274, 1285 (9th Cir. 1980) (noting, in a preliminary injunction case, that "in view of the disparity in size and revenue sources between the tribe and the state, the balance of hardships does tip in the [plaintiff's] favor").

state law claims in those jurisdictions, the likelihood that such differences will ultimately matter does not appear so great as to reject Four-U's stay motion.

## 2. Potential Harm to the Public

Georgia-Pacific argues that issuance of a stay will harm the public's interest in the enforcement of trademarks. In its brief, Georgia-Pacific states, "assuming Georgia-Pacific's claims are meritorious, the public is being deceived by the continuing actions of Four-U." [Doc. 16, at 3].

Principal responsibility for any confusion lies with von Drehle, which another district court has found not be infringing any trademark enjoyed by Georgia-Pacific. If that decision is upheld on appeal, there would appear to be little basis for Georgia-Pacific to claim that Four-U and other distributors cause any confusion by buying von Drehle towels and selling them to their customers. That being so, there is little risk of harm to the public in issuing a temporary stay of the instant case.

## 3. Judicial Economy

Granting the stay order, at least pending the appeals in the other cases, and perhaps permanently, will prevent duplicative litigation and reduce the risk of inconsistent judgments.

The purpose of issue preclusion is "to avoid the relitigation of decided issues." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 905 (6th Cir. 2002). Georgia-Pacific argues that the facts in the instant case are distinct from the facts litigated previously, namely, that the issues in this case arise with regard to Four-U specifically.

Issue preclusion does not, however, require identical parties. Rather, it only requires that the party being precluded had a full and fair opportunity to litigate the issue. *See* Restatement (Second) of Judgments § 29 ("A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person.").

state law claims in those jurisdictions, the likelihood that such differences will ultimately matter does not appear so great as to reject Four-U's stay motion.

## 2. Potential Harm to the Public

Georgia-Pacific argues that issuance of a stay will harm the public's interest in the enforcement of trademarks. In its brief, Georgia-Pacific states, "assuming Georgia-Pacific's claims are meritorious, the public is being deceived by the continuing actions of Four-U." [Doc. 16, at 3].

Principal responsibility for any confusion lies with von Drehle, which another district court has found not be infringing any trademark enjoyed by Georgia-Pacific. If that decision is upheld on appeal, there would appear to be little basis for Georgia-Pacific to claim that Four-U and other distributors cause any confusion by buying von Drehle towels and selling them to their customers. That being so, there is little risk of harm to the public in issuing a temporary stay of the instant case.

## 3. Judicial Economy

Granting the stay order, at least pending the appeals in the other cases, and perhaps permanently, will prevent duplicative litigation and reduce the risk of inconsistent judgments.

The purpose of issue preclusion is "to avoid the relitigation of decided issues." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 905 (6th Cir. 2002). Georgia-Pacific argues that the facts in the instant case are distinct from the facts litigated previously, namely, that the issues in this case arise with regard to Four-U specifically.

Issue preclusion does not, however, require identical parties. Rather, it only requires that the party being precluded had a full and fair opportunity to litigate the issue. *See* Restatement (Second) of Judgments § 29 ("A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person.").

The essence of Georgia-Pacific's claims in each of the prior cases and the instant case is that von Drehle paper towels were placed in Georgia-Pacific dispensers and this constitutes trademark infringement and interference with contracts. The fact that Georgia-Pacific has now sued a different distributor, Four-U, rather than the previously sued distributor, is not dispositive and does not prevent the application of issue preclusion.

Furthermore, a stay pending the outcome of two appeals will not "place [the] case in limbo for years." *Ohio Envtl. Council*, *supra*, 565 F.2d at 396. This stay is not indefinite and, in fact, briefing has already begun in both of Georgia-Pacific's appeals.[2]

The findings of the district courts in the two pending cases, if sustained on appeal, will be significant, and potentially preclusive as to Georgia-Pacific's trademark and contract-based causes of action. If the act of placing von Drehle paper towels in Georgia-Pacific dispensers is held not to constitute trademark infringement or interference with a contractual or business relationship and Georgia-Pacific had a full and fair opportunity to litigate that claim before the circuit courts, this could preclude the majority of Georgia-Pacific's causes of action in this case.

To be sure, Georgia-Pacific has not previously litigated its claims under the Ohio Deceptive Trade Practices Act, § 4165.01 *et seq*. But—put most simply: if Georgia-Pacific cannot prevail as to one distributor of von Drehle towels, it does not appear to have much of a chance against any distributor. This is so, despite the putative differences in state-law causes of action. At their core, the claims Georgia-Pacific brings here appear essentially duplicative of claims, whether based on state statute or common-law causes of action, of the same general sort brought elsewhere. While

---

[2]*See Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.*, *appeal docketed,* No. 09-1942 (4th Cir. August 21, 2009); *Georgia-Pacific Consumer Prods. LP v. Myers Supply*, *appeal docketed*, No. 09-2980 (8th Cir. August 21, 2009).

absolute issue preclusion, or other grounds for asserting estoppel may not ultimately be found to exist, the apparent general congruence between the Ohio claims and the state law claims elsewhere favors granting the stay.

I conclude that it is in the "interest [of] economical use of judicial time and resources" to stay the entire case pending the decisions of the Fourth and Eighth Circuit Courts of Appeal. *IBEW*, *supra*, 1989 WL 78212, *8. To do otherwise would be to potentially waste the time and resources of both parties to this action and compel me to do work that, in the fullness of time, may well not be necessary.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT Four-U's motion to stay [Doc. 15] be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
