**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Georgia-Pacific Consumer Products LP, et al.,	Case No. 3:09CV1071

        Plaintiffs

   v.	**ORDER**

Four-U-Packaging, Inc.,

        Defendant

      This is a suit by a trademark owner of branded paper towel dispensers and towels against a distributor of a different brand of paper towels. The suit arises from the fact that lessees of the plaintiff's dispensers purchase the defendant's replacement rolls for their dispensers, rather than plaintiff's more expensive replacement rolls.

      Plaintiffs Georgia-Pacific Consumer Products LP and Georgia-Pacific LLC [together, Georgia-Pacific] assert seven causes of action against Four-U-Packaging, Inc. [Four-U]: 1) false representation and false designation of origin and dilution under the Lanham Act, 15 U.S.C. § 1125; 2) contributory trademark infringement under the Lanham Act, 15 U.S.C. § 1114; 3) counterfeiting under the Lanham Act, 15 U.S.C. § 1114(1)(a); 4) common law unfair competition; 5) tortious interference with contractual relationships; 6) tortious interference with business relationships; and 7) violation of the Ohio Deceptive Trade Practices Act, O.R.C. §§ 4165.01 *et seq.*

Jurisdiction is proper under 28 U.S.C. § 1331 and § 1332.

Pending is Four-U's motion to dismiss. [Doc. 31]. For the reasons discussed below, the motion is granted.

**Background**[1]

Georgia-Pacific, organized under Delaware law, has its principal place of business in Atlanta, Georgia. Georgia-Pacific leases paper towel dispensers to distributors who, in turn, sublease the dispensers to end users such as restaurants and office buildings. Plaintiffs' dispensers and towels are trademarked. The lease and sublease agreements require the end users to stock the dispensers with only Georgia-Pacific brand paper towels.

Four-U is an Ohio seller and distributor of janitorial supplies. Four-U is a distributor for the von Drehle Corporation [von Drehle], whose paper towels fit in Georgia-Pacific dispensers. Georgia-Pacific alleges that operators of locations with its dispensers have bought von Drehle towels from Four-U and placed those towels in the Georgia-Pacific dispensers.

Georgia-Pacific brought cases similar to the instant one in four other district courts. One case has reached a final resolution, while three remain pending.

In the first case, Georgia-Pacific sued a distributor of von Drehle paper towels alleging trademark infringement, unfair competition, tortious interference with current and prospective business relationships, unfair and deceptive trade practices, conversion and concerted action. The district court granted summary judgment to the defendant distributor on all claims except a contributory trademark infringement claim. *Georgia-Pacific v. Myers Supply, Inc.*, 2009 WL 1850324, *3-7 (W.D. Ark.).

---

[1] This discussion comes largely from my previous decision granting Four-U's motion to stay pending decisions from the Fourth and Eighth Circuits. *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 2010 WL 55973 (N.D. Ohio).

After a bench trial, the district court also dismissed that claim, holding that there was no likelihood of confusion. *Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 2009 WL 2192721 (W.D. Ark.). The court held that purchasers of replacement rolls, not persons taking the towels from dispensers, were the proper focus of any possible confusion between plaintiff's rolls with those of other manufacturers. *Id.*, *6. The court also noted that "Georgia-Pacific has produced no evidence that an actual consumer or purchaser of paper towels has ever been confused by the presence of Von Drehle paper in a[ ] [Georgia-Pacific] dispenser." *Id.* Georgia-Pacific appealed the case to the Eighth Circuit, which affirmed as to all claims. *Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771 (8th Cir. 2010).

The other three courts with similar litigation have yet to reach a final judgment on the merits.

In *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 645 F.Supp.2d 532, 536-39 (E.D.N.C. 2009), *rev'd,* 618 F.3d 441 (4th Cir. 2010), Georgia-Pacific sued von Drehle and a distributor of von Drehle's rolls, alleging almost identical causes of action. Granting summary judgment in defendants' favor, the district court held that Georgia-Pacific failed to show that von Drehle's towels caused customer confusion. This was so, the court held, because the relevant end users were businesses purchasing replacement towels from distributors, not customers using paper towels in restrooms. *Id.* at 536-37.

Finding genuine issues of material fact as to likelihood of confusion on the part of users and also the distributor's intent, the Fourth Circuit reversed and remanded. *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 618 F.3d 441 (4th Cir. 2010).

Citing *Myers Supply, supra,* von Drehle filed a motion in the district court for reconsideration, urging the same grounds – issue preclusion – as in this case. The district court denied the motion, --- F.Supp.2d ----, 2011 WL 4402949 (E.D.N.C.). The case is awaiting trial.

Finally, the Southern District of Ohio has denied the defendant's motion to dismiss in *Georgia-Pacific Consumer Prods. LP v. Superior Janitor Supply, Inc.*, 2011 WL 4002563 (S.D. Ohio). In that case the plaintiffs here have alleged the same causes of action against another distributor of von Drehle's replacement towels. Contrary to the decision which I reach in this case, the Southern District rejected the distributor's claim of issue preclusion.[2]

## Standard of Review

Plaintiffs argue that, although defendants move to dismiss the case, I should treat their motion as a motion for summary judgment because defendants have presented matters outside the pleadings. Defendant does not disagree.

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to

---

[2] The trial court has stayed proceedings in another case until February 13, 2012. *Georgia-Pacific Consumer Prods. LP v. Inland Supply Co., Inc.*, No. 09-246 (D. Nev. Aug. 9, 2011) (order granting stay).

go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Defendants argue that the doctrine of issue preclusion bars plaintiffs' claims.

Issue preclusion acts to "preclude[ ] relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990).

To establish issue preclusion, the defendant must show:

1. Identity of issues in the earlier and later litigation;

2. The parties in the prior action and the court adjudicated the issue;

3. Resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;

4. The party to be estopped was a party to the prior litigation (or in privity with such a party); and

5. The party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (citing *Santana–Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005)).

Plaintiffs, principally contesting the first and fifth elements of issue preclusion, dispute application of this doctrine on the basis of: 1) dissimilarity of facts between *Myers Supply* and this

case; 2) inability in that case to litigate their Ohio state claims; 3) different standards for the underlying claims in the Sixth and Eighth Circuits; and 4) conflicting determinations from the Fourth and Eighth Circuit courts.

### 1. Dissimilarity of Facts

Plaintiffs claim the facts between *Myers Supply* and this case are not identical. They point out that *Myers Supply* involved a distributor for a particular part of Arkansas, and the evidence included surveys of consumers in Arkansas. Here the geographic area of concern is Northern Ohio and Northeast Indiana.

Plaintiffs used consumer surveys in *Myers Supply* and other litigation to demonstrate "actual confusion" between trademarks, a factor in an analysis of the likelihood of confusion between two products, which goes to prove trademark infringement. The Sixth Circuit has held that the central inquiry for a finding of trademark infringement is "a likelihood of confusion in the minds of the buying public." *General Motors Corp. v. Keystone Automotive Industries, Inc.*, 453 F.3d 351, 354 (6th Cir. 2006) (quoting J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* §§ 2:7-2:8 (4th ed. 1996)). The Sixth Circuit uses an eight-factor test for determining likelihood of confusion:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;

      7.      defendant's intent in selecting the mark; [and]

      8.      likelihood of expansion of the product lines.

*Id.*

The Sixth Circuit has recognized that the likelihood of confusion is relevant at the time a product is purchased, as well as further "downstream": "Since Congress intended to protect the reputation of the manufacturer as well as to protect purchasers, the Act's protection is not limited to confusion at the point of sale." *Id.* at 356 (quoting *Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1245 (6th Cir. 1991)). Therefore the relevant populations amongst whom to evaluate the likelihood of confusion are both the purchasing public (i.e., the sublessees and purchasers of the EnMotion dispensers), as well as the end consumers (i.e., the restroom users who use the EnMotion dispensers).[3]

It is true that the distributor in *Myers Supply* supplied paper towels for a different region than defendant Four-U in this case. But plaintiffs provide no reason for why a survey of paper towel distributors or restroom users would produce different results than those in Arkansas.[4]

More importantly, the Eighth Circuit decision recognized that the lower court relied more on the "general industry practice" rather than the consumer surveys in its determination of the

---

[3] The district court in *Myers Supply* found "the entities that own or sublease paper towel dispensers" to be the most important population, apparently crediting testimony from Georgia-Pacific designating them as the relevant consumers. 2009 WL 2192721 at *6. Nevertheless, the district court considered both the actual purchasers as well as the restroom users in its likelihood of confusion analysis. *Id.* at *6-*8.

[4] The consumer survey attached to plaintiffs' opposition does not include consumers in Northern Ohio or Northeastern Indiana. Their survey uses consumer data samples from Arizona, California, Florida, Illinois, Massachusetts, Minnesota, New York and Texas. [Doc. 32, Exh. D, p. 5]. Plaintiffs appear to have submitted the same consumer survey they used in Arkansas to the district court in North Carolina and the Fourth Circuit. *Myers Supply*, *supra*, 621 F.3d at 775-76.

likelihood of confusion. *Myers Supply*, *supra*, 621 F.3d at 775. There is no indication in either the trial or appellate court decision that the "general industry practice" was unique to Arkansas. Plaintiffs do not provide any basis for believing that "general industry practice" would be different in Ohio or Indiana than in Arkansas.

Plaintiffs also argue that because intent of the defendants is a factor in determining the likelihood of confusion amongst consumers, they should be allowed to litigate the issue of Four-U's intent.

While a defendant's intent is a relevant factor in determining likelihood of confusion, no one factor is dispositive. *See Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002). The Sixth Circuit has held that "finding that at least one factor favors the nonmoving party is likely, but such finding does not prevent an overall finding of no likelihood of confusion or preclude summary judgment." *Id.* Plaintiffs also fail to recognize that the district court in Arkansas, in finding lack of intent on the defendant's part, relied not on defendant-specific intent or practice, but rather on the common industry practice of "stuffing" (putting paper towels into dispensers of a different brand). *Myers Supply*, *supra*, 621 F.3d at 775.

In sum, I conclude that no dissimilarity of facts between this case and *Myers Supply* bars application of the doctrine of issue preclusion.

### 2. Chance to Litigate Ohio Claims

Plaintiffs argue that issue preclusion cannot bar their Ohio law claims because they could not litigate those claims in Arkansas. They did, however, litigate equivalent Arkansas law based claims.

8

Issue preclusion does not require that the parties have litigated the exact *legal* claim in the prior proceedings. What matters is the underlying issues of fact.[5] The underlying issues of fact for the Arkansas and Ohio claims are identical. The plaintiffs fully and fairly litigated the legal consequences of those facts in the Arkansas proceeding, which resulted in a valid and final judgment on the merits.

### 3. Different Standards in Sixth and Eighth Circuits

Plaintiffs contend that there are different tests to find a "likelihood of confusion" under the Lanham Act in the Eighth and Sixth Circuits, and that, accordingly, they have not had an opportunity to litigate under the Sixth Circuit standard.

The Eighth Circuit in *Myers Supply* considered:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005), citing *SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

*Myers Supply*, *supra*, 621 F.3d at 775.

---

[5] If the Ohio state law claims would be barred, it would be due to the decision on the Arkansas state claims. "When a federal court is sitting in diversity and state substantive law is at issue, the federal court's judgment should be accorded the same preclusive effect as a state court's judgment would have." *Quality Measurement Co. v. IPSOS S.A.*, 2003 WL 77206, *3 (6th Cir.) (citing *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 597, 508 (2001)) (unpublished disposition). The prerequisites for issue preclusion under Arkansas law and federal law do not differ significantly, and so do not merit separate consideration. Arkansas applies issue preclusion when: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Palmer v. Arkansas Council on Economic Educ.*, 40 S.W.3d 784, 790 (Ark. 2001).

9

The Sixth Circuit considers eight factors, discussed *supra*, which are similar though not identical to the Eighth Circuit factors. However, both circuits note that no one factor is dispositive, and instead these lists of factors serve as "guides" for finding a likelihood of confusion. *Davis*, *supra*, 430 F.3d at 903 ("[w]e use [these factors] as a guide to determine whether a reasonable jury could find a likelihood of confusion. Factual disputes regarding a single factor are insufficient to support the reversal of summary judgment unless they tilt the entire balance in favor of such a finding."); *Gray*, *supra*, 295 F.3d at 646 ("[n]one of these factors is dispositive of a plaintiff's case; these factors are simply a guide to help determine whether confusion would be likely to result from simultaneous use of the two contested marks.").

The ultimate question in both circuits remains the same: namely, whether consumers would be confused as to who has made a product on the basis of an identifying mark. *Davis*, *supra*, 430 F.3d at 905 ("the core element of trademark infringement law is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product") (internal quotation marks omitted); *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 793 (6th Cir. 2004) ("The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way").

Thus, though formulated somewhat differently, the standards in both circuits are essentially the same.

### 4. Conflicting Determinations

Plaintiffs argue that the decisions from the Fourth and Eighth Circuits present conflicting determinations of law, and therefore they must be allowed to litigate. Restatement (Second) of

Judgments § 29 (1982) (listing inconsistent determinations as a factor for consideration in determining whether issue preclusion applies).

Plaintiffs are incorrect that the decisions from the Fourth and Eighth Circuits are inconsistent. As the Eighth Circuit itself noted in its decision,

> the Fourth Circuit rendered no opinion whether Georgia-Pacific had proven a likelihood of confusion by bathroom consumers. Rather, it held only that the evidence offered by Georgia-Pacific-the same consumer-surveys presented in this circuit-created a genuine issue of material fact as to the likelihood of confusion, remanding the case for trial.

*Myers Supply*, *supra*, 621 F.3d at 775 -776.

The Fourth Circuit did not rule either way on the issue of likelihood of confusion. Instead, finding genuine issues of fact, it remanded the issue to the district. The Eighth Circuit affirmed the district court's finding of no likelihood of confusion – a decision which the district court had reached after fully considering the evidence. *Id.* at 776. There is no conflict between the decisions of the Fourth and Eighth Circuits.

**Conclusion**

Georgia Pacific fully and fairly litigated its claim in the Arkansas litigation that "stuffing" its dispensers with competitors' replacement rolls violated its trademark and related and other claims. The fundamental facts here and there are the same. There is no proof that the relevant consumers – either distributors purchasing replacement rolls from plaintiffs' competitors or restroom users – are different in Northeastern Indiana and Northern Ohio from the consumers evaluated in Arkansas. The standards for determining issue preclusion are essentially the same in the Eighth and Sixth Circuits. Dismissal on the basis of issue preclusion is entirely justified.

Accordingly, it is hereby

ORDERED THAT defendant's motion for dismissal (Doc. 13), being deemed a motion for summary judgment, be, and the same hereby is granted.

So ordered.

s/James G. Carr<br>Sr. United States District Judge